Ruby CONWAY et al.,
Plaintiffs-Appellees,

v.

CHEMICAL LEAMAN TANK LINES,
INC., Defendant-Appellant,

The Fidelity & Casualty Company of New
York, Intervenor-Appellee.

No. 74–2856.

United States Court of Appeals,
Fifth Circuit.

Oct. 18, 1976.

Dale Dowell, Beaumont, Tex., for defendant-appellant.

Harold Peterson, Beaumont, Tex., for plaintiffs-appellees.

Ned Johnson, Wendell C. Radford, Beaumont, Tex., for Fidelity & Cas. Co. of N. Y.

ON PETITION FOR REHEARING

(Opinion 1/7/76, 5 Cir., 1976, 525
F.2d 927)

Before BROWN, Chief Judge, and RIVES and GEE, Circuit Judges.

GEE, Circuit Judge:

On rehearing we conclude that we erred in limiting reversal and remand to Mrs. Conway's judgment and affirming

those of the other plaintiffs. All judgments are before us for review, and the erroneous refusal of the district court to permit impeachment of Mrs. Conway's testimony appears to us, on reconsideration, to infect all recoveries equally. She was a material witness on both liability and all damages issues, those material to the awards recovered by the other plaintiffs as well as her own. As to these, then, her veracity was quite as material as to her own judgment, and the court's erroneous refusal to permit its testing by cross-examination of her misleading response to the "only marriage" question put by her counsel as damaging to the defense.

Appellees argue vigorously that the answer was not misleading at all.[1] The argument proceeds that in context the question and answer are most fairly interpreted as referring to marriages prior to hers to Mr. Conway, the decedent. Aside from the utter irrelevance of such an inquiry, it is exactly the *context* of the question which renders it so potentially misleading. That context is one of a trial strategy not neutral as to her current marital status but calculated to indicate to the jury that she continued Mr. Conway's unremarried widow. The action was prosecuted in the Conway name despite her remarriage. Trial court rulings were obtained forbidding defendant to refer to her remarriage. And in this context, that of a defendant muzzled as to such matters, came the colloquy set out at note 1 above. At this point, she made her marital status a sword, not a shield. The effect of such a strategy can only have been to press upon the jury a condition contrary to fact and to seek to derive benefits from the misleading impression so created, rather than merely to let the matter lie as irrelevant.

Finally, appellees contend stoutly that we should view the error as harmless, though the Supreme Court of Texas has ruled squarely that in the state courts of Texas it is reversible and never harmless.[2] And it is true, as noted in our original opinion, that whether or not an error is harmless is a matter of federal law.

But as a matter of policy, it would be unfortunate indeed for us to reach a conclusion having the effect of creating an alternate forum in which beneficiaries of the Texas wrongful death statutory scheme could proceed, knowing that though in state court the fact of a ceremonial remarriage was sure to be admitted, in federal court a refusal to admit it might be deemed harmless "in a given instance." Federal jurisdiction of such matters may often be intentionally created by the assignment of claims or the appointment of nonresident administrators,[3] though the practices are dubious and the trend seems to be away from them.[4] So long as evidence of remarriage is admitted or excluded on a balancing test in federal court[5] and its admission reviewed under Rule 61's harmless-error rubric, the federal forum can only be far more attractive to the remarried widow than the Texas courts, where such evidence is invariably admitted, and the consequences of suit in the former system significantly different.

More importantly, on an analytical plane we recognize in article 4675a one of those rare evidentiary rules which is so bound up with state substantive law that federal courts sitting in Texas should accord it the same treatment as state courts in order to give full effect to Texas' substantive policy. Actions for wrongful death did not exist at common law, and in Texas,

1. On direct, she testified:
   Q: Was this your only marriage?
   A: Yes, sir.

2. *Exxon Corp. v. Brecheen*, 526 S.W.2d 519, 525 (Tex.1975): "Article 4675a [making the fact of ceremonial remarriage admissible] would be rendered ineffectual by an independent judicial determination that disregard of its terms in a given instance was harmless error."

3. *See* 6 C. Wright & A. Miller, Federal Practice and Procedure: Civil §§ 1548, 1557 (1971).

4. *See Kramer v. Caribbean Mills, Inc.*, 394 U.S. 823, 89 S.Ct. 1487, 23 L.Ed.2d 9 (1969).

5. Fed.R.Evid. 403.

as elsewhere, they are entirely the creation of statute. *See Marmon v. Mustang Aviation, Inc.,* 430 S.W.2d 182 (Tex.1968) (Norvell, J.). The Texas version of Lord Campbell's Act is short, consisting of nine statutory provisions, articles 4671–4678, Vernon's Annotated Texas Statutes. These remained constant for almost fifty years, until 1973, when the Texas Legislature, doubtless to forestall further use of the tactics employed here to create a misleading impression of continuing widowhood, enacted article 4675a and no other amendment to the act at that session. Such a course of action evidences clearly that the legislators considered the amendment a matter of significance and one necessary to substantive policy in an area peculiarly within their control. As such, article 4675a represents more than a mere rule of evidence; it is a declaration of policy by the creators of the Texas wrongful death action that the sort of palming off theretofore practiced would no longer be tolerated.

In such and similar circumstances, federal courts have long recognized an exception to the inapplicability of *Erie* to evidentiary questions:

Although, as has been indicated, the courts have held the *Erie* doctrine inapplicable on questions of evidence, other than those of privilege, it must be remembered that some matters often thought of as part of the law of evidence are not governed by Rule 43(a). Burden of proof is an issue of substance, controlled in diversity cases by state law. The misnamed "parol evidence rule" is not a rule of evidence at all but of substantive law, and state law must be applied. Finally there are circumstances in which a question of admissibility of evidence is so intertwined with a state substantive rule that the state rule excluding the evidence will be followed in order to give full effect to the state's substantive policy.

9 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2405, at 326–27

(1971). As then Judge Brown observed for our court in a similar situation:

For all practical purposes, we think the underlying theory of a history of driving while intoxicated presented in the Compton [*Compton v. Jay,* 1965, Tex., 389 S.W.2d 639] case is substantially the equivalent of a negligent entrustment claim. As the Texas claim and the method of establishing it are so intertwined, we think the same ruling ought to be made by the Federal Court insofar as admissibility is concerned whether it is *Erie*-bound or not. F.R.Civ.P. 43(a); cf. *Monarch Ins. Co. of Ohio v. Spach,* 5 Cir., 1960, 281 F.2d 401.

*E. L. Cheeney Co. v. Gates,* 346 F.2d 197, 206 (5th Cir. 1965). *See also Fry v. Lamb Rental Tools, Inc.,* 275 F.Supp. 283 (W.D.La. 1967).

For these reasons we reject the suggestion that refusal by a federal court to admit evidence of ceremonial remarriage in a Texas wrongful death action may sometimes be harmless error. The constituent statute requires its admission; the Texas Supreme Court has interpreted the statute as mandatory. These determinations, though in a sense matters of evidence-law, are embedded in Texas substantive law and policy, and we adopt them as part of the Texas wrongful death act for application in federal trials of actions brought thereunder.

All judgments herein are reversed, and the cause is remanded for a trial at which the evidence of Mrs. Conway's remarriage, if offered, will be received.

REVERSED and REMANDED.